### FIELDS v. WATSON.

1. A deed conveying land to A "to have and to hold unto the said A during her natural life, and after her death to be equally divided between the lawful heirs of her body," is not governed by the rule in *Shelley's Case.* MR. JUSTICE McIVER *reserving his opinion.*
2. The act of 1853 (12 *Stat.*, 298; *Gen. Stat.*, ¿ 1862) has not abrogated the rule in *Shelley's Case.* MR. JUSTICE McGOWAN *dissenting.*
3. In action to try title, it appearing that the defendants were tenants in common with the plaintiffs, and no ouster being proved, the Circuit

Judge granted a non-suit, and no motion was made before him for leave to amend. *Held,* That there being no error of law in granting the non-suit, the cause could not be remanded for the purpose of permitting plaintiffs to amend their complaint and demand partition. MR. JUSTICE McGOWAN *dissenting.*

4. The refusal of a tenant in common to comply with the demand of a co-tenant for the surrender of the entire premises, and the plea of the statute of limitations to an action by such co-tenant for the recovery of the whole land, do not constitute an ouster.

5. A deed of conveyance by husband and wife in 1856 of the wife's land without a renunciation by the wife of her inheritance, did not convey the wife's interest, and at her death the land descended to her heirs at law.

Before COTHRAN, J., Marion, April, 1884.

The opinion of this court fully states the case.

*Messrs. Evans & Evans,* for appellant.

*Mr. C. A. Woods,* contra.

April 22, 1885. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to recover a tract of land in Marion County, containing three hundred acres. The land was originally granted to Samuel Smith, Sr., who died intestate in 1843, leaving three children, viz., Samuel Smith, Jr., Elizabeth Moody, and Frances Page, wife of William Page, and among these heirs the lands of the intestate were divided by consent, the tract in question here falling to Frances Page.

It seems that William Page, by request of his wife, Frances, put his daughter, Isabella Platt, and her husband, David W. Platt, in possession of the land, at what time does not appear; but within a year after the division of her father's estate, Frances Page died, leaving as her heirs and distributees her husband, William, and children, viz., Samuel J. Page, John S. Page, Pinckney C. Page, Isabella (Mrs. Platt), Rena (Mrs. Bethea), Frances (Mrs. Watson), Polly (Mrs. Deer), Betsy (Mrs. Hayes), and William J. Page. On January 6, 1854, William Page executed a deed of the premises to Isabella Platt, "to have and to hold during her life, and after her death to be equally divided

between the lawful heirs of her body." On December 5, 1856, the sheriff of Marion County, under executions against D. W. Platt, sold all his interest in the premises, which was purchased by William J. Page and conveyed to him by the sheriff. On December 25, 1856, Samuel J., John S., Pinckney C., Rena (Mrs. Bethea), and Frances (Mrs. Watson), conveyed all their respective interests in the premises to W. J. Page, "in trust for the sole and separate use of Isabella Platt." The conveyance of Watson and wife did not, however, contain a relinquishment of Mrs. Watson's inheritance.

Isabella Platt, the life tenant, died in 1882, and the plaintiffs, her children, instituted this action for the recovery of the land against W. J. Watson and Catharine S., his wife, who, in some way or other not clearly explained, had "gone on the lands in 1873," and were still in possession. They insisted in their answer that they were in possession under Samuel Watson (brother of W. J.), who purchased the land for a valuable consideration, which, however, was not made to appear.

Upon hearing the pleadings and evidence, Judge Cothran granted a non-suit, and the plaintiffs appeal upon the grounds:

I. "The objections made by the defendants that the rule in *Shelley's Case* applied to the deed of William Page to Isabel Platt of date January 1, 1854, is erroneous. 1. That it is contrary to the decisions of our courts. 2. That the act of 1853, in force at the time of the execution of the deed of William Page to Isabel Platt, abrogates the rule in *Shelley's Case*, and this act is made of force by the general statutes of 1882.

II. "That the interest of David W. Platt, the husband of Isabel, was sold at sheriff's sale in August, 1855, and that interest vested in defendants, and there being no alienation by Isabel, the estate of Isabel at her death vested in the plaintiffs, at least to the extent of two-thirds, even under the rule in *Shelley's Case*, as, according to that rule, Isabel was entitled to the whole estate in fee, and the husband was entitled to one-third as distributee of his wife, and the sale in 1855 did not vest even that interest in defendants.

III. "Because his honor erred in holding that the defendants could not be sued at law, for the reason that W. J. Watson was a

co-tenant with plaintiffs, notwithstanding the proof that possession of the premises was demanded before suit, to which he replied, admitting that he was in possession, but denying title of the plaintiffs, and set up the statute of limitations as a bar to plaintiffs' claim, which was a complete ouster of the plaintiffs, and entitled them to sue at law even a co-tenant.

IV. "It was urged in argument that there might be an estate by the curtesy in David W. Platt, the surviving husband. To this it is submitted: 1. That the estate by the curtesy in this State only obtains when there is a fee conditional, and the deed here does not create a fee conditional. 2. That to constitute an estate by the curtesy there must be a seizin in fact at the time of the death of the wife, and Isabel was divested of possession by the sheriff's sale in 1855. 3. That even if there was an estate by the curtesy in David W. Platt, it could not avail the defendants, who claim by assignment under sheriff's sale in 1855, before the estate originated.

V. "Because his honor, having intimated the opinion that this was a proper case for equity jurisdiction, should, according to the liberal provisions of the code, have allowed plaintiffs to amend their pleadings and make it a case in equity," &c.

The Circuit Judge did not assign his reasons for granting the non-suit, and therefore we will have to consider the whole case to ascertain whether there is in the order error of law. As we understand it, the land in question, by the division of the estate of Samuel Smith, Sr., became the property of Frances Page, the wife of William Page, in 1843. She lived only about a year after she became the owner in severalty, and during that time she did not alienate it. True, her husband, William Page, with her consent as it is said, put it into the possession of his daughter, Isabel Platt, but there is no pretence that she joined her husband in a regular deed and relinquished her inheritance as was then required by law; and therefore at her death the land was her property and descended to her heirs—one-third to her husband, William Page, and the remaining two-thirds to her children, Samuel J., John S., and Pinckney C. Page, and Isabella (Mrs. Platt), Rena (Mrs. Bethea), Frances (Mrs. Watson), Polly (Mrs. Deer), Betsy (Mrs. Hayes), and William J. Page. After the

death of his wife, viz., January 6, 1854, William Page did undertake to convey the land to his daughter Isabel, "to have and to hold unto the said Isabel Platt during her natural life, and after her death to be equally divided between the lawful heirs of her body," but that deed conveyed no more than the third which belonged to William Page as heir of his wife.

At this point the estate divides, and we must consider the branches separately. First. As to the third inherited by William Page. Did the deed executed by him to Isabel Platt give her as expressed only a life estate with remainder over to the heirs of her body, or was her estate, under the operation of the rule in *Shelley's Case*, enlarged into a fee conditional giving her husband, Platt, who is still alive, a life estate therein by the curtesy? We incline to think that, according to the terms of the deed itself, without regard to the provisions of the act of 1855, the rule in *Shelley's Case* is not applicable. The words are "to have and to hold unto the said Isabel Platt during her natural life, and after death to be equally divided between the lawful heirs of her body."

It is always open to inquiry whether the words "heirs" or "heirs of the body" are used in their proper technical sense or in a more inaccurate sense to denote children, issue, or next of kin, &c. It seems to us that the words here used indicate an intention to give in remainder to those described as heirs of the body of Isabel, not in indefinite succession as heirs, but at a particular time, absolutely as individuals creating "a new stock of inheritance." *Myers* v. *Anderson*, 1 *Strobh. Eq.*, 344; *McLure* v. *Young*, 3 *Rich. Eq.*, 576; *Evans* v. *Godbold*, 6 *Rich. Eq.*, 26; *McIntyre* v. *McIntyre*, 16 *S. C.*, 290. In the case of *McLure* v. *Young*, in delivering the judgment of the court, Chancellor Dunkin said: "The authorities all agree that if the estate limited to the heirs of the body or issue be of a quality or be given to be enjoyed in a way incompatible with the idea that they are to hold it in indefinite succession (as that it be given to them as tenants in common or to be equally divided between them), this takes it out of the rule in *Shelley's Case*, and the immediate heirs or issue take as purchasers."

But if we should be in error as to the general doctrine (and

we confess that the cases upon the subject are not all in accord), ·we suppose that the act of 1853 (*Gen. Stat.*, § 1862) must have some bearing upon the question. The deed was executed after and therefore subject to the act, which declares that "whenever in any deed \* \* \* an estate either in real or personal property shall be limited to take effect on the death of any person without heirs of the body or issue, or issue of the body, or other equivalent words, such words shall not be construed to mean an indefinite failure of issue, but a failure at the time of the death of such person."

There can be no doubt that this provision has special reference to the question of remoteness, with a view to sustaining remainders; but it would be strange if this statutory interpretation of certain words and phrases should not have some bearing also upon the construction of these identical words when used to designate those who are to take in remainder. The question of remoteness, if not entirely, is almost always identical with that as to indefinite succession, one being in most cases the cause of the other. If the terms of the deed to Isabel had been to her and the heirs of her body, and in default of such heirs then over, it is clear that the words "heirs of her body," under the statute, could not have been construed to mean an indefinite failure of issue, but a failure at the time of the death of Isabel. As was said by Mr. Justice McIver, in *Simons* v. *Bryce*, 10 *S. C.*, 365: "In construing a will [and deed] which took effect after the passage of that act [1853], we are required to read a devise to one and the heirs of his body or to one and his issue, and in case of his death without heirs of his body or without issue then over to some one else, as if the gift were to one and the heirs of his body, and in case of his death without leaving issue living at the time of his death then over, in which case the limitation would undoubtedly be good," &c.

Now, as we understand it, the rule in *Shelley's Case* does no more than to turn an estate expressly for life into one precisely such as we have described above. When an estate for life is given to the ancestor, and a remainder be thereon limited to his heirs, or heirs of his body, the rule comes in and executes immediately the remainder in possession of the ancestor, who takes an

estate in fee or in tail according to the terms of the limitation (*Williams* v. *Foster*, 3 *Hill*, 193); that is to say, it takes the words "heirs of the body" from the remainder and incorporates them in the gift to the first taker, thereby changing an estate expressly for life to one of inheritance, to him and "the heirs of his body." This being the case, and the statute forbidding that a particular interpretation shall be placed on the words "heirs of the body" when found in express terms, it can hardly be that the forbidden interpretation of the very words must be allowed where they are merely supplied by operation of the rule in *Shelley's Case.* So far as we are informed, this is a new question under the act of 1853. The argument was not full upon the subject, but from the lights before us, we do not see why the interpretation required by statute to be given to the words "heirs of the body," when found in a deed or will, should not also be applied to the same terms when raised and inserted merely by implication.

Assuming, then, that Mrs. Isabel Platt took only a life estate under the deed, it follows that the sale of the premises by the sheriff in 1856, under executions against David W. Platt, the husband of the life tenant, could give an interest only during the life of the said Isabel, and she being now dead, that such interest has terminated. It seems that the interest of David W. Platt thus sold by the sheriff was conveyed to William J. Page, trustee of Mrs. Isabel Platt. It was, however, assumed in the argument that that interest had been, in some way or other, transferred to the defendant, Watson. We have not been able to find any such statement in the "Case"; but if it were as claimed, we do not see how that could now benefit the defendant. The whole one-third interest, which was well conveyed by the deed of William Page, vested, at the death of Isabel Platt, in the persons who at that time answered the description of "heirs of the body" of the said Isabel; not, however, as such heirs, but as individuals by purchase.

Second. Then as to the two-thirds interest not covered by the aforesaid deed, but which, upon the death of Frances Page, descended to her heirs. In the first place, the plaintiffs, children of Isabel Platt, are entitled in their own right to the share

proper of their mother, Isabel. Besides, the other distributees, Samuel J. Page, John S. Page, Pinckney C. Page, Frances Watson and her husband, and Rena Bethea and her husband (seemingly for the purpose of carrying out the purposes of the deed from their father, William Page, to Isabel), conveyed, or attempted to convey, their respective shares to William J. Page, in trust "for the sole and separate use of Isabel Platt." None of the other distributees are claiming any interest in the land except W. J. Watson, who, being a son of Frances Watson and a grandson of Frances Page, claims through his mother (supposed to be dead) an interest in the lands as heir of his grandmother. It appears that his father, Samuel Watson, and wife, Frances, in January, 1857, conveyed, as before stated, their interest in the lands to W. J. Page, trustee for Isabel. But it seems that the wife, Frances, did not renounce her inheritance, and W. T. Watson now insists that her share was not well conveyed, and, as one of her children, he has an interest as tenant in common with the plaintiffs; and therefore their action at law for the land cannot be maintained. On the other hand, the plaintiffs insist that the defendant, being in possession, refused on demand to yield possession, in whole or in part, and thereby ousted them and subjected himself to an action at law for the land.

We do not think it necessary to go into the matter of ouster, or to consider the question whether, under the facts as developed, an action at law for the land was the proper proceeding. The decision of that question either way would not tend to adjust the complicated interests of the parties. We agree with the Circuit Judge that this is a proper case for equitable jurisdiction. The parties are numerous, and in several ways and in different amounts are interested as tenants in common. The rights of the parties are somewhat involved, and can be more certainly reached under the flexible rules of equity. Both law and equity are now administered by the same court, and as the spirit of the code favors amendments in the interest of justice, we do not see any insuperable difficulty in the way of allowing plaintiffs to amend their complaint so as to ask partition according to the rights of the parties. *Small* v. *Small,* 16 *S. C.,* 72; *Graveley* v. *Graveley,* 20 *S. C.,* 110.

4

In the case of *Small* v. *Small*, Mrs. Mary Small claimed a tract of land which she had purchased at sheriff's sale, but it turned out that the execution under which she purchased was good only against two of the parties who owned the land. It was held that the sheriff's deed only conveyed the interest of two to Mrs. Small, which made her a tenant in common with the other owners, who had a right to partition, and for that purpose the cause was remanded.

In the case of *Graveley* v. *Graveley*, it is said : "The spirit of the code is in favor of amendments, and of having all cases which have a status in court tried and decided upon their merits. In most cases where it can be done without surprise or injustice to the defendant, leave will be given to amend. We think the law upon the subject properly stated by Mr. Pomeroy in his work on Remedies, § 580 : 'The prayer for relief is generally regarded as forming no part of the cause of action, and as having no effect, and as furnishing no test or criterion by which its nature may be determined.  *  *  *  The fact that, after the allegation of facts relied upon, the plaintiff has demanded judgment for a sum of money by way of damages, does not preclude the recovery of the same amount upon the same state of facts by way of equitable relief,' and authorities."

As it has turned out that the defendant is a tenant in common with the plaintiffs, I think that the cause should be remanded, with leave to make the question of partition. But as my brethren think that this court has not the power to remand with a view to amendment, and that the non-suit should be affirmed, the judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON (concurring in the result). The land in question originally belonged to Mrs. Frances Page, assigned to her in the partition of the real estate of her deceased father in 1843. Immediately after this assignment Mrs. Platt was put into possession by Mr. and Mrs. Page. Mrs. Page died in 1844, leaving a husband, William Page, and nine children as her heirs at law, Mrs. Platt being one of the children. At the death of Mrs. Page the land descended to her heirs in the pro-

portion of one-third to William Page, and one-ninth of two-thirds to each of the children. In 1854 William Page conveyed this land "to Mrs. Platt for life, and at her death to be equally divided between the lawful heirs of her body." Of course, this conveyance only covered his interest therein, *i. e.*, one-third. I do not think that the rule in *Shelley's Case* applied to this conveyance. The fact that the grantor directed the estate to be "equally divided between the heirs of the body" of Mrs. Platt at the termination of her life estate shows, I think, that those words were used as words of purchase, and not of limitation. And this view is sustained by the authorities cited in the opinion of Mr. Justice. McGowan.

I do not concur, however, in that part of the opinion in which it is held that the act of 1853 has abolished the rule in *Shelley's Case*. That act, as I understand it, was intended to remedy a certain evil which had grown up in the construction of deeds and instruments where limitations had been made upon the contingency of the first taker dying without heirs of the body. These words, "without heirs of the body," and similar words, had been interpreted to mean an indefinite failure of such heirs, or issue, and being thus interpreted, it was universally held that limitations made upon such a contingency were too remote, being in violation of the well established principle that no limitation could be made upon a contingency which might not happen within a life or lives in being, and twenty-one years thereafter. This construction, it was seen, had the effect of defeating many limitations against the evident intent of the parties. Hence the act of 1853, which provides that in such limitations, the parties in the use of such words, shall not be held to mean an indefinite failure of issue, but a failure at the death of the first taker, thus bringing the contingency within the legal time, removing this remoteness and saving the limitations. This, it seems to me, was the only purpose of the act of 1853, and it should not be extended so as to abolish the rule in *Shelley's Case*.

According to my conception of the rights of the parties in this case, the children of Mrs. Platt, the plaintiffs here, at her death took one-third interest in the land under the deed of William Page, as purchasers, that they took two-thirds of the one-ninth

which Mrs. Platt inherited from her mother, and two-thirds of the shares of those who conveyed to William J. Page in trust for her, supposing that these shares were validly conveyed, and in fee, the father, if he is alive, being entitled to one-third of these two latter interests. This construction makes the plaintiffs joint tenants with such of the children of Mrs. Page as did not convey their interests to William J. Page, as trustee, and the defendants belong to this last class. The action below was the ordinary action of trespass to try titles, which cannot be sustained by one joint tenant against another, unless there has been ouster. There was no sufficient proof of ouster at the trial. Hence, as it appears to me, there was no alternative but for his honor below to order a non-suit, which having been ordered, there is no room left for an amendment of the character allowed in the opinion.

It is true that the prayer for relief constitutes no part of the complaint, and consequently a mistake in the prayer is not fatal under the reformed procedure; inasmuch as all forms of actions have been reduced to one, the courts look to the cause of action as stated in the complaint, and will grant such remedy as the cause stated may demand, but that relief, whatever it is, must be appropriate to allegations in the complaint constituting the cause of action. I do not understand that a party can sue upon one cause of action and obtain relief upon another not stated in the complaint. Nor can a plaintiff who has lost his case, as stated in the complaint, after such loss abandon that cause, and then incorporate a new and entirely different cause in the same proceeding and go on. This, it seems to me, is what the opinion of Mr. Justice McGowan permits to be done.

The plaintiffs began a law case, an action to try titles; there was no equitable feature therein, no facts claiming partition, or any facts upon which the court could grant any other relief than that prayed for in the complaint. In appeals to us in a case at law, our power extends to the correction of errors of law only. I do not understand that the Circuit Judge made any ruling upon the question of amending the complaint, and therefore I do not see how we can take any action upon that question, as there is no error of law alleged. For these reasons I concur in the result.

MR. JUSTICE MCIVER (also concurring in the result). It seems to me that, in any view which may be taken of this case, there was no error in the judgment appealed from. If the deed from William Page to Isabella Platt created in her an estate in fee conditional, then upon her death her husband, David W. Platt, became entitled to the premises as tenant by the curtesy, and until his death, of which there is no evidence, the plaintiffs would not be entitled to recover. Whether the defendants hold the interest thus vested in David W. Platt is wholly immaterial, as long as it does not appear that the plaintiffs have acquired such interest, for nothing is better settled than that in an action of this kind the plaintiffs must recover upon the strength of their own title, and not upon the weakness of their adversaries. It is quite sufficient for a defendant to show an outstanding paramount title in some third person, whether he connects himself with such title or not, in order to defeat a recovery by the plaintiff.

But if, on the other hand, the rule in *Shelley's Case* does not apply, and Isabella Platt took under the deed above mentioned an estate for her life only with a valid remainder to the heirs of her body, then it is clear that plaintiffs, being tenants in common with defendants, could not recover in this action without proof of *ouster*: and in my judgment there was no such proof in this case. Two things are relied upon by the appellants as evidence of ouster: 1st. The refusal of defendants to comply with the demand of the plaintiffs for the possession of the premises. 2nd. The plea of the statute of limitations. It will be observed, however, that the demand was *not to be let in possession* as tenants in common, which, if refused, might possibly have been regarded as sufficient evidence of ouster, but the demand was that defendants should surrender the possession of the premises to the plaintiffs, and this a tenant in common might well refuse, inasmuch as he would be just as much entitled to the possession as the plaintiffs. So, too, as to the effect of the plea of the statute of limitations that was pleaded to a complaint demanding, not an undivided share or shares of the premises, but for the whole of the land, and the plea of the statute to such a demand certainly should not be regarded as any evidence of ouster. I think,

therefore, that the Circuit Judge was clearly right in granting the non-suit.

The only remaining inquiry is whether this court, after finding no error in the judgment appealed from, can grant an amendment for the purpose, not of repairing any defect or omission in the action which the plaintiffs elected to bring, but for the purpose of enabling the plaintiffs, who had failed to establish the cause of action upon which they relied, to substitute an entirely new and different cause of action to which the evidence in the case shows they may be entitled. It must be remembered that this was an action at law, in which our jurisdiction is confined solely to the correction of any errors of law which may be discovered in the judgment appealed from. If, therefore, no such errors have been discovered, it seems to me plain that we have no other alternative but to affirm the judgment. I am aware that under the liberal provisions of the code this court has gone very far, perhaps too far, in allowing amendments; but it seems to me that we are asked in this case to go further than we ever yet have done. There was no application in the Circuit Court for leave to amend, which, if made and refused, might possibly have afforded us the opportunity of reviewing such refusal, although such applications, being addressed to the discretion of the court, are ordinarily not appealable. But there being no ruling upon the subject below, we do not see what there is for us to review.

Nor is this like the case of *Finley* v. *Robertson* (17 *S. C.*, 435), where this court, having discovered such errors in the judgment appealed from as rendered it necessary to remand the case to the Circuit Court, allowed the plaintiffs to amend their complaint so as to fit the new aspect which was put upon the case by the judgment of this court; for in the present case we have not discovered any error in the judgment appealed from which renders it necessary, or even proper, to remand the case to the Circuit Court, and I do not see by what authority this court can reverse a judgment in which no error has been discovered simply to enable the plaintiffs to make not only a substantial, but a radical change in the nature of the action which the plaintiffs themselves elected to bring. Indeed, even under the liberal provi-

sions of the code, the privilege of amendment is not unlimited, for in section 194 this privilege is limited to such amendments as do not "change substantially the claim or defence."

The case of *Small* v. *Small* (16 *S. C.*, 64) was a case originally for partition, in which the devisees of Mary Small set up title in themselves, and their claim was sustained by the Circuit Judge, but this court on appeal reversed or modified the Circuit decree upon this point, and held that these devisees were only entitled to two shares in the land, and not to the whole land. The case was therefore remanded to the Circuit Court for the purpose of enabling the parties to have partition as originally asked, in the proportions fixed by the judgment of the Supreme Court. I am unable to see, therefore, how that case affects the question now under consideration. Nor do I see the application of the case of *Graveley* v. *Graveley* (20 *S. C.*, 93), for in that case also this court found it necessary to remand the case, not simply for the purpose of amendment, and then allowed the plaintiff to insert additional allegations in the complaint, which, however, did not change substantially the claim originally made.

It seems to me, therefore, that this court has no power to remand this case to the Circuit, simply for the purpose of enabling the plaintiffs to make the proposed amendment, but that the judgment of the Circuit Court should be affirmed.

I desire to add, however, that I do not assent to the view presented by Mr. Justice McGowan as to the effect of the act of 1853 upon the rule in *Shelley's Case.* Nor am I prepared to agree to the view of the Chief Justice that the rule in *Shelley's Case* does not apply to the present case. It does not appear to me that the decisions in *Myers* v. *Anderson* (1 *Strobh. Eq.*, 344); *McLure* v. *Young* (3 *Rich. Eq.*, 571); and *McIntyre* v. *McIntyre* (16 *S. C.*, 290), sustain that view. In *Myers* v. *Anderson*, after the bequest for life, the limitation was to the issue to be their "absolute property for ever," and these words were held to mean the same thing as if the limitation had been to the issue *and their heirs*, which would create a fee in the issue and rebut the idea that the testator intended that the property should go to the issue in indefinite succession. In *McLure* v. *Young* the limitation was to the lineal descendants of the life tenant, *"abso-*

*lutely and for ever*," creating in them a fee which, upon the authority of *Myers* v. *Anderson*, was held to negative the idea that the intention was that the property should go to the lineal descendants in indefinite succession. So in *McIntyre* v. *McIntyre* the limitation was to the issue "*and their heirs for ever*," the appropriate words to create a fee; and there, too, it was held that the idea of indefinite succession was negatived.

It seems to me, therefore, that these cases only hold that where the limitation to issue or heirs of the body is expressed in terms which import an intention to create in them an estate in fee simple—a different estate from that which they would take if the rule in *Shelley's Case* should be applied—then that rule would not apply. In the present case, the limitation is not to the issue *and their heirs*, nor to the issue "absolutely and forever," nor to the issue to be their "absolute property forever," but the limitation is, "after her death to be equally divided between the lawful heirs of her body." These cases cannot, therefore, be regarded as authority for the proposition that the rule in *Shelley's Case* does not apply in the present case. It is true that in *McLure* v. *Young*, Chancellor Dunkin, quoting the language of Johnstone, Ch., in *Myers* v. *Anderson*, does say: "The authorities also agree that if the estate limited to the heirs of the body or issue be of a quality, or be given to be enjoyed in a way, incompatible with the idea that they are to hold it in indefinite succession (as if it be given to them as tenants in common, or to be equally divided between them), this takes it out of the rule in *Shelley's Case*, and the immediate heirs or issue take as purchasers."

This, however, was a mere *dictum* so far as it relates to the effect of superadded words expressive of an intention that the issue should take as tenants in common or that the property should be equally divided between them, for there were no such words either in *Myers* v. *Anderson* or *McLure* v. *Young*, and the decisions in those cases rested solely upon the ground that the superadded words were expressive of an intention that the issue should take estates in fee simple, and not upon the ground that they were to take as tenants in common, or that the property should be equally divided between them. Now, while even the *dicta* of such eminent chancellors are entitled to be regarded with

the greatest respect (and I do not wish to be regarded as disposed to question them), yet they are not authority.  All that I desire to say is that I do not regard the cases above cited as authority for the proposition that the rule in *Shelley's Case* does not apply in the present case; but as, according to my view, it is not necessary now to decide that question, I prefer to reserve my opinion until I can have an opportunity to examine the question more carefully than I have been able now to do, owing to the pressure of other official duties.

Judgment affirmed.